Brinkerhoff, J.
In the determination of this motion it has been thought best to consider somewhat carefully some of the questions it presents, and to report the case.
At the November term of the Ross county common pleas, 1857, the plaintiff in error was indicted under the act of May 1, 1854, “ to provide against the evils resulting from the sale of intoxicating liquors in the State of Ohio,” and was subsequently tried, convicted and sentenced.
The first four sections of said act are as follows:
“ Seo. 1. That it shall be unlawful for any person or persons, by agent or otherwise, to sell, in any quantity, intoxicating liquors, to be drank in, upon, or about the building or premises where sold, or to sell such intoxicating liquors, to be drank in any adjoining room, building, or premises, or other place of public resort connected with said building.
“ Seo. 2. That it shall be unlawful for any person or persons, by agent or otherwise, to sell intoxicating liquors to minors, unless upon the written order of their parents, guardians, or family physician.
“ Sec. 3. That it shall be unlawful for any person or persons, by agent or otherwise, to sell intoxicating liquors, to persons intoxi■cated, or who are in the habit of getting intoxicated.
“ Seo. 4. That all places where intoxicating liquors are sold in violation of this act, shall be taken, held, and declared to be common nuisances, and all rooms, taverns, eating-houses, bazars, restaurants, groceries, coffee-houses, cellars, or other places of public resort, where intoxicating liquors are sold in violation of this act, shall be shut up and abated as public nuisances, upon the conviction of the keeper thereof, who shall be punished as hereinafter provided.”
*372 *The indictment was framed upon the fourth section of the statute, and is as follows:
“ The State of Ohio, JRoss Qounty, ss.
“ Of the November term of the court of common pleas within and for Boss county aforesaid, in the year of our Lord one thousand eight hundred and fifty-seven.
“ The grand jurors of the State of Ohio, impaneled, sworn, affirmed, and charged to inquire of crimes and offenses committed within the body of Eoss county, aforesaid, in the name and by the authority of the State of Ohio aforesaid, upon their oaths and affirmations present and find:
“ That on the fourth day of July, in the year of our Lord one thousand eight hundred and fifty-seven, and from that day to the day of the finding of this indictment, to wit: the eleventh day of November in the year last aforesaid, at the county of Eoss aforesaid, in said State of Ohio, one Peter Kern was and has been unlawfully the keeper of a room of public resort where intoxicating liquors other than wines manufactured from the pure jqicc of the grape cultivated in the State of Ohio, ale, beer, or cider, were and have been then and there sold by the said Peter Kern in violation of the act of the general assembly of the State of Ohio, entitled ‘ an act to provide against the evils resulting from the sale of intoxicating liquors in the State of Ohio,’ passed by the said general assembly on the first day of May, in the year of our Lord one thousand eight hundred and fifty-four, to the common nuisance of the citizens and people of the State of Ohio, contrary to the statute in such case made and provided, and against the peace and dignity of the State of Ohio.”
Luring the progress of the case, a number and variety of questions were raised by counsel for defendant, none of which are deemed of sufficient importance to demand particular notice, except this: Is the indictment sufficient in law ?
With the exception of a few formal phrases, distinguishing an indictment from an information, it will be seen that this indictment is in form literally the same as that approved by this court in the case of Miller & Gibson v. The State, 3 Ohio St. 488. If, therefore, we were to hold this indictment to be insufficient, we must directly overrule, pro tanto, that case. For all the rules of pleading applicable to the substance of indictments, apply equally to criminal informations; and no possible reason, having its foundation in regard for the rights of the accused, can be given why they should not. That case seems to have been carefully considered; the ques *373 tion as to the sufficiency of the information was properly involved, and the court seems to have *been unanimous in its decision. At least no one is reported as dissenting. Prosecuting attorneys throughout the state have thought themselves entitled to adopt, and have adopted, the form of information and indictment thus authoritatively sanctioned ; a large number of convictions under just such informations and indictments must have been had, and which, if this indictment be érroiieous, must or may be reversed; and pending cases of like character must be abandoned. These considerations, as well as the high respect we entertain for the maturely-considered opinions of our predecessors, would induce us to shrink from a hasty overruling of the case of Miller & G-ibson v. The State on this point. Nevertheless, it being suggested that serious doubts are entertained on the subject, we have been willing to review it, and, having done so with some care, a majority of the court are confirmed in the opinion that information and indictments under the fourth section of the statute in the form designated in that case, are in all respects sufficient.
Two objections, which we will briefly consider in this order, are urged to the sufficiency of this form of indictment:
1. It is urged that the indictment is not sufficiently specific in its description of the locality of the premises where the unlawful business is carried on ; that it ought to describe the lot where the same are situate, or, at least, to designate the street, or ward, or town, city, or township where the' same are situate ; whereas this indictment describes the room therein named only as being “ at the county of Ross aforesaid.”
The first answer to this objection is found in the statute itself, the thirteenth section of which provides that “ in all prosecutions under this act, by indictment or otherwise, it shall not be necessary to state the kind of liquors sold, or to describe the place where sold,” etc.
If this answer be unsatisfactory, there is another, which seems to us conclusive, and which is this :
In looking into precedents of indictments at common law for nuisances, we find that where the nuisance was such by reason of its proximity to roads, dwellings, and the like, such proximity was always set forth in the indictment; but where the nuisance #was such absolutely and without reference to its neighbor *374 hood, it was usual to describe it as situate in a certain parish in the county. Rex v. White & Ward, 3 Burr. 333; 15 Mass. 240.
The reason for whatever particularity of description of the place of the nuisance was requisite in an indictment at common law was this, that the proper officer of the court in the execution of its judgment might be able to identify the nuisance in order to abate it. 21 Maine, 9. Now, it was held in Miller & Gibson v. The State — and we are not aware that the correctness of such holding has ever been called in question — that, on a conviction under an indictment like this, framed on the fourth section of the act, no order can properly issue to any officer of the court for the abatement of the nuisance; but the order is upon the defendant himself, and is to be enforced by attachment against him. Of course, then, no specific description is required as a guide to the officer; and it can hardly be supposed that a defendant needs to be enlightened as to the locality of a nuisance which he himself is adjudged to have created and continued. The reason of the common-law rule on. this subject, then, fails to apply this case, and with the failure of the reason the rule itself ceases.
2. This indictment charges, in general terms, the defendant below with being, and for a long time having been, the keeper of a room of public resort, where intoxicating liquors were and had been sold in violation of the act; and it is, in the second place, objected that it ought to have specified which of the three distinct offenses defined in the first three sections of the act he had committed, or in other words, which of the three sections of the act, preceding that under which he was indicted, he had violated; that is to say, whether he was a keeper of a room of public resort where intoxicating liquors were sold to be drank where sold, or were sold to minors, or sold to drunkards. And it is claimed that such specification is required by the settled rules of criminal pleading, and in order that the accused may be duly informed of the nature and cause of the accusation against him.
In considering the question presented by this objection, it is essential to bear in mind that the indictment is framed upon the fourth, and not upon the first, second, or third sections of the act.
^The defendant below is not indicted for selling intoxicating liquors to be drank where sold, nor for selling them to minors, nor for selling them to drunkards, but for being the keeper of a place of public resort, where some one or more of these things are done *375 habitually, and as a series of acts. The charge is laid with a continuando ; and do one violation of the act will suffice, but a series of them must be proved in order to warrant a conviction.
Now, the rules of criminal pleading, as applicable -to this case, are to be sought for in the established practice of courts, and are evidenced by approved precedents. ' Let us refer, then, to approved precedents, long used in analogous cases, and see, if we can, what they require. We shall find the allegations to be exceedingly general, without any of the specifications here contended for. Take, for example, the precedent of an indictment for keeping a bawdy and disorderly house, as given in 2 Chitty’s. Criminal Law, 39, which is as follows:
“ That C D, late of, etc., on, etc., and on divers other days and times, between that day and the taking of this inquisition, with force, and arms, at, etc., aforesaid, a certain common bawdy-house, situate, etc., unlawfully and wickedly did keep and maintain; and in the said house, for filty lucre and gain, divers evil-disposed persons, as well men as women, and whores, on the days and times aforesaid, as well in the night as in the day, there unlawfully and wickedly did receive and entertain; and in which said house the said evil-disposed persons and whores, by the consent and procurement of the said C D, on the days and times aforesaid, there did commit whoredom and fornication, whereby divers unlawful assemblies, riots, routs, affrays, disturbances, and violations of the peace of our said lord the king, and dreadful, filthy, and lewd offenses in the same house, on the days and times aforesaid, as well in the night as in the day, were there committed and perpetrated, to the great damage and common nuisance of all the liege subjects of our1 said lord the king, in-manifest destruction, ruination, and subversion of youth, and other people, their manners, conversation, estate, and obedience, and against the peace,” etc.
Here is a common and approved precedent of a case as nearly ^analogous to that defined by the fourth section of our “ liquor law ” as anything which can be found in criminal proceedings at common law. And it will be noticed that, beyond the fact that the accused was the keeper of the house, and except the specifications-of time and place, the allegations are all of the most general nature ; and while it charges a variety of distinct offenses as being directly or indirectly procured or suffered to be done, such as riots, *376 routs, affrays, and other breaches of the peace, and nameless enormities, there are no specifications whatsoever.
The rules of criminal pleading, then, as derived from established practice and. approved'precedents, do not condemn this form of indictment. See Janson v. Stuart, 1 Term, 754, 755.
But it is said that this form of indictment does not duly inform the accused of the nature and cause of the-accusation against him, so as to enable'him fairly to prepare for his defense, as would the form of the indictment demanded by the objection. Let us see.
It is not contended that it is requisite for an indictment under the fourth section of the act, so far to descend to particulars as to specify the names of persons to whom intoxicating liquors "are sold. Indeed, this is precluded by the terms of the thirteenth section, which enacts that, “ for any violation of the fourth section, it shall not be necessary to state the name of any person to whom sold.” All the specification claimed to be requisite is, as whether the liquors were sold to be drank where sold, or to minors, or to drunkards.
Now, suppose an indictment to be drawn in all respects in conformity with the demand implied in this objection. Suppose it to charge, in the first count, that C D was the keeper of a room of public resort, whore intoxicating liquors were and had been sold in violation of the act, in this, to wit, that they were sold to be.drank in, upon, and about the premises where sold; and in a second count, the same charge, with the specifications, is this, to wit, that they were sold to minors, etc.; and in the third count, that they were sold to persons intoxicated ;■ and in a fourth count, that they were sold to persons in the habit of getting intoxicated. Or, suppose all these specifications, under the general charge, to be embraced in a single count of an indictment. The count *would be good. It would not be open to the objection of duplicity or multifariousness ; for the crime, the keeping of such a room, is a unit, and would be so charged. Any evidence admissible under the indictment before us, would be alike admissible under cither of the forms of indictment supposed. What specific information would the accused then have which he now has not ? Obviously, none whatever. And this form of indictment trenches on no substantial right, and deprives him of no real advantage to which he would be entitled if his objections to this indictment were removed and the same were made to conform to his demands.
*377 Indeed, we think that as a party is in law presumed to be always prepared to defend his general character, so this statute and the reason of the case suppose that an accused party ought, under a general charge, to be able to vindicate the legality of his general, continuous, and habitual business.

Motion overruled.

Swan, Scott, and Sutlief, JJ., concurred.
Bartley, C. J., dissented.